Good morning. My name is Robert Ellis. I'm an assistant from the Eastern District of Washington at Yakima. The only issue before the Court this morning is whether or not a simple statement, a voluntary statement by Mr. Quaempts to the effect that he said, shit, she came here, I didn't, should be admitted to trial. I think counsel has successfully misidentified the issue for the Court. I've been looking at this and considering it for a couple of weeks. And I'm going to take a slightly different approach in my argument than I did in my brief. The facts are not really an issue in this case. The police received a report of a rape from the Toppenish Hospital. They responded to that. Officer Peralt from Toppenish was at the hospital as was Officer Perez from Tribal Police. They talked with the victim. They responded to the location that the victim identified for them, together with Sergeant Kenny Hopthewitt, also of the Tribal Police. They went to the door. The entire conversation, it appears on the record, was between Sergeant Kenny Hopthewitt and Mr. Quaempts. Sergeant Hopthewitt knocked on the door and announced, Daryl, police are here, we need to talk to you. Mr. Quaempts threw open the door. The door, according to both Officer Perez and Sergeant Hopthewitt, swung wide open. The door opened out or in? Opens out, Your Honor. Okay. That was the testimony. It opened out and went against the outside wall. He was still in his bed, right? Yes, sir, he was. And, Your Honor, the excerpts of records have pictures of that small camp trailer. We don't have exact dimensions. I estimate 18 to 20 feet in length, single room but for the bathroom. At the front of the trailer is the bed and I don't know where that's the dining table. The bed was within arm's reach of the doorway, right? Yes, and the district court so found that's consistent with Sergeant Hopthewitt's. He opened it with his foot. Is that right? It would have just kicked the knob and pushed the door since it opened out. No, as I understand it, Your Honor, Sergeant Hopthewitt said he reached over with his hand, opened the door, turned the knob and flung the door open. What was the district court's rationale? Your Honor, the district court's rationale, as I understand it, was that at the point of telling Sergeant Hopthewitt, telling Mr. Kwempsch you're under arrest, this became a coercive situation and he effected arrest of the defendant in the home and that's where I disagree. And counsel have obviously argued this entire case from the standpoint of Payton. Well, if he wasn't in the home, where was he? Oh, there's no question he was in the home. But the issue is not where the defendant was, Your Honor. The issue is what is the constitutional right that's being protected here. We exclude evidence because we seek to keep law enforcement and the police from violating our constitutional rights. And so what's the constitutional right? Well, the defense would argue you have, as I understand it, you have a constitutional right not to be arrested in your home. But that's not what Payton says or Reddick or any of the other cases from this district or from this circuit even. What it says is police can't enter the home to effectuate the arrest. And it's absolutely undisputed in this case that those three officers never entered the residence of Mr. Kwempsch. Are you suggesting then that Mr. Kwempsch consented to the arrest by coming out of the trailer? Sergeant Hopda was standing outside. He said, Darrell, you're under arrest. Darrell said, can I get dressed? I said, sure, you can get dressed. He apparently, Sergeant Hopda described him as wearing black trunks. And I don't know whether those were boxer briefs or a gym, said gym trunks or what. But he asked if he could get dressed. The sergeant said yes. No officer entered the residence. Mr. Kwempsch got dressed, stepped out of the residence, at which time he was placed in handcuffs, put in a patrol car, and transported to the tribal jail. Can the officers arrest somebody that they can't touch? I don't understand. He was arrested while you were in his home, right? Yes. He was told he was under arrest while he was in his home. Absolutely no question of that. But could they have just called through the window, Darrell, you're under arrest? Absolutely. Why not? I mean, I don't mean to be blunt here. If he had come out of the trailer, has he resisted arrest? Absolutely not. Absolutely not. And you know, there's nothing original in my comments here this morning. This is an issue that's covered in depth by LaFave in his treatise on search and seizure. It's Volume 3, Section 6.1e. And LaFave collects all the cases on this issue, including this circuit state court. What does Peyton mean? What does Peyton mean? I think Peyton means that, as the Supreme Court said, and as this Court has often said, there's a bright line rule. Police may not cross the threshold to effect a warrantless arrest, with two exceptions. One is exigent circumstances. What about the cases that approve what's called a constructive entry principle? Wasn't there a constructive entry here under that rule, if it applies? Your Honor, I'm familiar with that. And there are state cases that follow that or adopt that principle. I'm only aware of one circuit, Your Honor, in the federal courts that appear to adopt that, and that's the Sixth Circuit. There's the Morgan case out of the Sixth Circuit and one other one. I'm sorry I'm not remembering. Again, it's a footnote in LaFave's section on this. I know of no other federal circuit that's adopted that approach, Your Honor. And clearly, that approach is inconsistent with Peyton itself, because in Peyton and Riddick, the officers went there to effectuate warrantless arrest. And the Supreme Court could have told us, officers, you can't do that. You can't go to someone's home without a warrant to arrest them. And they didn't say that. They said you can't enter the home to effect the arrest. Let me throw out some hypotheticals here to try to show you some problems with approaching this, as I think the defense has. Let's say everything else is the same in this situation, except Mr. Quimps has some more means, if you will, than he did. He lives in a very small camping or travel freighter on December 7, 2001. Let's say he lived in a three-bedroom rambler, same reservation, a modest housing authority house, if you will. Police knock on the door. Sergeant Hopwood knocks on the door, says, Darrell, police, I need to talk to you. Well, Mr. Quimps is again in bed, but in a bedroom in the house. He has to get up out of the bed, come to the door and open it. Again, Sergeant Hopwood says, you're under arrest. The police never enter. I don't think there's any question but what that would have been a valid arrest, and the state would be admissible under all of the cases we've cited to the court. And if we're different here because it's a camp trailer, then the court has to say that this constitutional protection is subject to the means of the defendant. A defendant in this case was lesser means, lying on a bed in a very small camp trailer, must have some sort of greater constitutional protection than a defendant lying in a bed in a bedroom away from the door. I guess I don't quite understand this. If he had a little thing, you know, one of those opening things and said, who is it? They said, the police, and you're under arrest. And he says, do you have a warrant? That would end it, wouldn't it? Yes, it would. But the difference here, Your Honor, is Mr. Quint acquiesced in the arrest. He didn't dispute the arrest. He had every right to. He had the right not to open his door. He had the right not to make any comments. You're conceding that he still had an expectation of privacy, which is not what you were arguing in your brief. That's where I was. Well, certainly he has an expectation of privacy in his home. This is the first time I think I've heard of this concept about a right to resist an arrest. Is that what you're saying? He had the right to? Every citizen has a right to resist an arrest? A warrantless arrest in their home? Anywhere. Well, sure, there's lots of tort law on that, Your Honor. If you're, you know, say, being arrested for drunk driving by a police officer, you can resist? No, sir, no. No, you have assumed away the critical element, the defendant's in his home. So it only applies at home. In the home, you can resist arrest? Yes. And you can, in fact, if I'm in my home and the officers come in, same situation, but come into my home and I sue that officer for violating my privacy, I would win. Well, you see, what I'm not understanding is that in your brief, you argued that he had no right to privacy anymore because he was standing in the door, which we have some cases that, because he opened the door. We have some cases that say that, with some dissents, that if you open the door and you're standing there in open view, you have waived your right to privacy that you have in your house. And as I understand what the district court held was, all he did was he was in bed. He just opened the door. It was just because his house happened to be very small. And that isn't the same as waiving your right to privacy. Now, you seem to be arguing now a different theory, that he had no more right to privacy. I don't quite understand what it is, that he should have told them that he should have asked for a warrant? No, he didn't have to do anything, Your Honor. The issue is you exclude evidence because the police violate a constitutional right. He has a constitutional right to privacy. There is no violation for police to go to a residence to arrest somebody. No, what he should have done is when the officer said, you're under arrest, he said, go away. I'm not coming out. He could have done that. He could have done that. Is that what we should encourage? Your Honor, we're getting real philosophical here. Yes, I think we should. I think we should. I think we should encourage critical thinking on the part of the citizens of this country. And they should understand their rights. We should teach this. If a citizen, you know, say is being arrested on the street and he can resist because, well, I don't believe he had probable cause, so he has no right to arrest me, therefore I have the right not to. Every time you resist. Your principle about the right to resist could apply in a lot of situations. I'm only trying to apply it in the facts of this case, Your Honor. And the facts of this case are Mr. Quince was in his residence and that the police never entered the residence to effectuate the arrest. I think you're conceding he had a right to the privacy of his home. Your argument concedes that. That's a necessary predicate to your argument. No, it's not. I think it's irrelevant, Your Honor. Because he's in the privacy of his home. So you're conceding he has a constitutional right to privacy, right? I certainly concede that. I think that's an irrelevant right in this circumstance. Your contention is simply that he consented to the arrest. He acquiesced in the arrest. Yes, sir. Okay. I think we understand your position in the argument. We'll hear from the defense. Good morning. May it please the Court. My name is Rebecca Pinnell. I'm appearing on behalf of Mr. Quince. I will express a bit of frustration, I think, in that I do think that counsel's argument is different from the brief and not what I responded to on the briefs. There is a case, which I didn't cite because it hadn't been briefed, United States v. Al-Azawi, A-L-hyphen-A-Z-Z-A-W-Y, 784 F. 2nd, 890, where it was a situation where the police officers surrounded an individual's home without a warrant, with probable cause to arrest, and ordered the person arrested while the person was inside of the home. The individual then left the home under that sort of belief that – it is a reasonable belief that when you're told by police you're under arrest. I don't think we should be encouraging people to say, well, I don't think you have authority. Certainly, the common person doesn't know that. Most people would leave not voluntarily, but under – due to the color of law and the color of the badge that is forcing them outside of the house. And this Court said in Al-Azawi that the arrest took place while the individual was inside of the home. Judge Shea in this case specifically found as a factual matter that Mr. Quince did not voluntarily leave the home, that he was under arrest at the moment that he was in his bed, hidden by covers. It's very similar to the situation that Judge Shorter pointed out. And there was a decision in the Fifth Circuit in a case called Flowers that I cited in my brief where a person just opened a little, like a speakeasy, door – bar to the home, and they didn't expose their entire self. And because the person didn't do that, the circuit court held that the person wasn't voluntarily exposing themselves to arrest. It was very similar in Mr. Quince's case. He – Ms. Pinnell, what rule would you like us to adopt? That is, there's a couple of different possibilities. One is that the police, if they can't – if they can't gain physical control of the defendant, ought to give them some kind of a warning that – it's similar to requesting consent to search the home. That is, you don't have to come out, but I'm telling you we're going to go get a warrant for your arrest. Please come out. Yeah. Or the rule could be that the police may not arrest unless they can gain physical control of the – of the defendant. I think that they could have – this case could have been much different. I've had cases that are much different where the police come to the house, it's a small house, and they ask the person if he'll step outside. The person steps outside, they place them under arrest. There may be arguments there, but certainly the facts are a lot stronger that the person voluntarily came outside, that the police simply asked them. And as is their right to do, a salesperson could knock on the door now. We have a case or two that says that if you open the door and expose yourself fully, that that's the same as coming outside. You have – you have not – you no longer can claim a right to privacy in the home. Is that what you're saying? There are. And those are very limited cases where you're standing in a public place. The government has conceded that Mr. Quimps was not in a public place in his bed. His bed was not a public place. The police could not have gone and searched the bed. He, although could be seen from the outside, as if – as one could through a screen door or through a window, he had forfeited certain aspects of his privacy rights, as the defendant did in Katz, who could be seen through a phone booth but not heard. But he was not as exposed to public sight, touch, hearing, and talk as a person who was outside of the home. And that is the test. Are you as exposed? And he retained that. But, counsel, is there – is there a difference between opening the door – when the – once the door is open, we talk about losing the right of privacy, between things that could be seen and, therefore, might be searched and persons that might be seen and, therefore, could be seized? I don't think there is a difference between things that can be seen and things that can be seized. For instance – and I apologize. It was another case, not in the briefs, but given a different aspect. There was a case of United States v. Oaxaca, O-A-X-A-C-A, spelled like the state in Mexico, where an individual was seen inside of his garage. The garage door was open. And this court held that, okay, he had forfeited his right not to be seen. The law enforcement could make a note of it. They could go get a warrant. They could probably even have a stakeout to watch this person's movements. But just because something can be seen doesn't mean it can be seized. Those are very different rights. And in any event, you would have to have a right to be in the house lawfully in order to seize it. Exactly. And that's where this is different. Exactly. In Oaxaca, the Court wrote that we don't need to have hermetically sealed houses in order to have some Fourth Amendment protections. There's different Fourth Amendment protections. Certainly, Mr. Quimps was there. He was seen. Once the door was open, he forfeited any legitimate expectation of privacy to what could be seen right there. But as far as himself being seized, just as the officers couldn't go inside and seize something they might have seen inside, they couldn't seize him either physically or through color of the badge by ordering him outside. And that was the judge's findings, and they weren't clearly erroneous that he was in the house at the time of his arrest. The officers had no right to be there, and he only left under force of law the obligation that any person would feel to comply with a police order. And certainly, I think Judge Tashima pointed out, it would be bad public policy to encourage people to resist an arrest in that situation. Certainly, in my part of the country, that leads to violence a lot of times when a person feels like they have to arm themselves or what have you not to comply with a police request. You're familiar with the United States v. Van Anten case? Yes. How would you distinguish that case from this one? Well, in Van Anten, I think that this Court said the individual came to the doorway. And in coming to the doorway, he came to a public space, and we're not going to draw fine lines of exactly where he was standing on the threshold. And so it was more of an ease of application, whereas Mr. Quimps clearly did not come to the doorway. And there's no need to worry about is this an inch within the doorway, an inch outside of the doorway. The Court in Van Anten clearly said that Van Anten came to the doorway. And the Court very specifically stated that there is a difference between the doorway and the inside portion of the motel room. The Court recognized that in Van Anten, and that is a significant distinction in this case, where Mr. Quimps, certainly the bulk of his body was well within inside the home at all times. I think that's all I have. Thank you. Any further questions? Thank you. You've used your time, but we'll give you 30 seconds. If I could, thank you, Your Honor. Simply respond to the first argument Ms. Pinell made about, I think, the case of Alwazi. Alwazi and those other cases, such as Johnson from this circuit, all have to do with the use by the police of coercion to get the defendant to come out. There were specific findings by the Court that bullhorns were used, that a 911 called the defendant and said his house was surrounded and he should come out, or the house outside the house was arrayed with officers with guns drawn. Okay. We've been around that board. And I simply remind the Court, there were specific findings by the district court at this case. There was nothing at all coercive about the officer's conduct on that night. Thank you, Counsel. The case just argued is submitted for decision. The next case, United States v. Calk, is submitted on the briefs. It is so ordered. The next case for argument is United States v. Calk.
judges: Schroeder, Tashima, Bybee